UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10420-RWZ


MARTHA ALVARADO,
ADMINISTRATRIX OF THE ESTATE OF ELIJAH ALVARADO,
and MARTHA ALVARADO, INDIVIDUALLY

v.

RICHARD E. CAESAR, M.D.


MEMORANDUM OF DECISION

December 17, 2012

ZOBEL, D.J.

    Plaintiff Martha Alvarado brought this diversity action individually and as administrator of the estate of her son, Elijah Alvarado, against defendant Dr. Richard E. Caesar alleging medical malpractice and seeking recovery pursuant to the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 and 10-7-1.2.  Defendant moves for a determination that Massachusetts substantive law will govern the case and, consequently, requests that the action be transferred to state court for the purpose of convening a medical malpractice tribunal as required under Massachusetts law.[1]  Plaintiff opposes defendant's motion and argues that the substantive law of Rhode

---

[1] Mass. Gen. Laws ch. 231, § 60B requires that "[e]very action for malpractice, error or mistake against a provider of health care" be presented to a medical tribunal (consisting of a Superior Court judge, an attorney, and a representative of the health care industry) which will determine whether there is "a legitimate question of liability appropriate for judicial inquiry."  If the tribunal decides that such a question does not exist, a bond is imposed on the plaintiff as a condition for further prosecution in court. Id.

Island, which does not require preliminary tribunal review, should apply to her case.[2]

## I. Background

Elijah Alvarado was born on October 28, 1992 with ambiguous genitalia and hypospadias, along with other related medical conditions. Throughout his childhood, Elijah underwent a number of corrective surgeries to address these conditions. At all times relevant to this action, Elijah and his mother, plaintiff, resided in Massachusetts.

Defendant, a Rhode Island resident, is a urologist licensed to practice medicine in both Rhode Island and Massachusetts. He provided medical treatment to Elijah, and performed many of Elijah's surgeries, over a period of approximately six years. Defendant maintains that nearly all of the care and treatment he rendered to Elijah occurred in his "principal office" in Fall River, Massachusetts, but plaintiff claims Elijah was often treated by defendant at his medical office in Providence, Rhode Island, or at Hasbro Children's Hospital, also located in Providence.

On March 13, 2009, defendant performed surgery on Elijah at Hasbro Children's Hospital to repair the boy's urethral abnormality – the second of two planned surgeries for hypospadias repair. On March 16, 2009, defendant discharged Elijah from the hospital to plaintiff's home in New Bedford, Massachusetts, where he died on the morning of March 19, 2009. The cause of death listed on Elijah's death certificate is "pulmonary thromboemboli due to probable deep vein thrombosis of lower extremity following recent urologic surgery for treatment of hypospadia." Docket # 15, Ex. C.

---

[2] Rhode Island law previously mandated a similar process for screening medical malpractice suits, but the statute was declared unconstitutional by that state's supreme court in 1987. See Boucher v. Sayeed, 459 A.2d 87 (R.I. 1987).

On March 6, 2012, plaintiff filed this action on behalf of Elijah's estate for negligence and individually for loss of consortium under the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 and 10-7-1.2, claiming that defendant failed to comply with the appropriate standard of care in his treatment of Elijah during and after the surgery.  Defendant filed the motion presently before the court on October 15, 2012, contending that Massachusetts substantive law applies and therefore the case must be transferred to state court to be heard by a medical malpractice tribunal.[3]  Plaintiff asserts that Massachusetts's screening requirement is inapplicable because Rhode Island substantive law governs her suit.

## II. Legal Standard

A federal court sitting in diversity applies the choice-of-law rules of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Massachusetts uses a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole."  Bushkin Assocs. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985).  This functional approach is "explicitly guided by the Restatement (Second) of Conflicts of Laws (1971)."  Levin v. Dalva Bros., Inc., 459 F.3d 68, 74 (1st Cir. 2006) (quoting Clarendon Nat. Ins. Co. v. Arbella Mut. Ins. Co., 803 N.E.2d 750, 753 (Mass. App. Ct. 2004)).

Several sections of the Restatement are relevant here.  Section 6 identifies seven general policy considerations applicable to choice-of-law decisions: (a) the

---

[3] Reference to a medical malpractice tribunal pursuant to Mass. Gen. Laws ch. 231, § 60B is considered a substantive (as opposed to procedural) right of a defendant under Massachusetts law.  See Byrnes v. Kirby, 453 F. Supp. 1014, 1019 (D. Mass. 1978).

needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2) (1971). Section 145, relating specifically to tort issues, provides that the rights and liabilities of the parties are determined by the state which has "the most significant relationship" to the underlying events and parties, taking into account: (a) the place where the injury occurred, (b) the place where the conduct causing injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Id. at § 145. Finally, section 146 states that in matters of personal injury, the law of the state where the injury occurred applies unless another state has a more significant relationship to the occurrence and parties under the principles listed in section 6. Id. at § 146.

**III. Discussion**

Both Massachusetts and Rhode Island have meaningful contacts with the parties and underlying occurrence in this case. Plaintiff resides (as did Elijah) in Massachusetts. Defendant is a resident of Rhode Island, but is licensed to practice medicine in both Massachusetts and Rhode Island and divides his practice between facilities in both states. Elijah was treated by defendant in both Massachusetts and

Rhode Island, and received his final surgery in Rhode Island.

Defendant argues that because Elijah died at plaintiff's home following discharge, Massachusetts is the place where the alleged injuries occurred and, pursuant to comment *e* to the Restatement § 146, the state whose laws ought to apply.[4] But examination of other relevant factors reveals that Rhode Island has a more significant relationship to the case. It is undisputed that defendant's allegedly negligent conduct (during and immediately after Elijah's surgery) occurred entirely in Rhode Island. Both, patients and health care providers, could reasonably expect that a Rhode Island-licensed physician performing surgery in a Rhode Island hospital would be governed by Rhode Island law. Although Massachusetts may have an interest in adjudicating cases involving its residents and in regulating the in-state practice of medicine, it has little interest, if any, in having physicians in Rhode Island comply with Massachusetts medical standards. In contrast, Rhode Island has a strong and significant interest in seeing that medical providers operating within its borders conform their practices to the laws and standards of that state.

Because of its relationship to the parties and the conduct causing plaintiff's alleged injuries, the interests at stake for Rhode Island are greater than those of Massachusetts. See Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 836 (Mass. 1994). Accordingly, Rhode Island law will govern resolution of the disputes in this case.

---

[4] Plaintiff points out that it is yet unclear when and where (Rhode Island or Massachusetts) Elijah began to develop pulmonary thromboemboli due to deep vein thrombosis, and thus the "place of injury" is unsettled.

## IV. Conclusion

Defendant's motion regarding choice of law and transfer of the case to state court to convene a medical malpractice tribunal (Docket # 12) is DENIED.

| | |
|---|---|
| December 17, 2012 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |